James Everett Shelton
316 Covered Bridge Road
King of Prussia, PA 19406
(484) 626-3942
jeshelton595@gmail.com

**Plaintiff, Pro Se**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **JAMES EVERETT SHELTON** | : | |
| | : | No. _____ |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **LIBERTY UNIVERSITY, INC.** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## COMPLAINT:

Plaintiff, James Everett Shelton, brings this action against Defendant, LIBERTY UNIVERSITY, INC., and alleges based on personal knowledge and information, and belief, as follows:

### Preliminary Statement

1.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

2.      Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Liberty University, Inc. contacted the Plaintiff to market its programs through the use of pre-recorded telemarketing calls

in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et. seq* (hereinafter referred to as the "TCPA").

3.      Liberty University has been sued for violating the TCPA before. See *Williams v. Liberty University, Inc.*, No. 18-cv-1528 (N.D. Ill.); *Wagner v. Liberty University, Inc.*, No. 6:20-cv-00040 (W.D.V.A, Jun. 22, 2020); *Elleby v. Liberty University, Inc.*, No. 5:21-cv-00093 (W.D.N.C., Jun. 14, 2021). Despite litigation putting Liberty on notice that its calling practices violated the TCPA, Liberty has not taken steps to comply with the law.

4.      Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## PARTIES

5.      The Plaintiff is JAMES EVERETT SHELTON ("Plaintiff"), an adult natural person and resident of Pennsylvania.

6.      Defendant LIBERTY UNIVERSITY, INC. (hereinafter "Liberty University" or "Liberty") is a Virginia nonstock corporation headquartered at 1971 University Blvd, Lynchburg, VA 24502.

7.      Defendant's registered agent is David M. Corry, at 1971 University Blvd, Lynchburg, VA 24502.

## JURISDICTION & VENUE

8.      This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 556 U.S. 368, 372 (2012).

9.      This Court has personal jurisdiction over the Defendant because they have repeatedly placed telephone calls to Pennsylvania residents with Pennsylvania telephone area codes, and

derive revenue from Pennsylvania residents, and they sell goods and services to Pennsylvania residents, including the Plaintiff.

10. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1)-(2) in that Defendant conducts business in, and a substantial part of the events giving rise to Plaintiff's claims occurred in Montgomery County, Pennsylvania, and Plaintiff was residing in Pennsylvania for all calls, in King of Prussia, Montgomery County, Pennsylvania. Defendant conducts business in this judicial district by calling Pennsylvania citizens.

11. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1)-(2) in that Defendant conducts business in, and a substantial part of the events giving rise to Plaintiff's claims occurred in Montgomery County, Pennsylvania.

## Statutory Background
## The Telephone Consumer Protection Act

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The TCPA Prohibits Automated Telemarketing Calls

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(l)(A)(iii).

14. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(l)(A). See 47 U.S.C. § 227(b)(3).

15.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

17.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

### FACTUAL ALLEGATIONS:

18.     Defendant Liberty University is a "person" as the term is defined by 47 U.S.C. § 153(39).

19.     Liberty University is a non-profit university.

20.     Its acceptance rate is 50%.

21.     Its graduation rate is 28.5%.

22.     Liberty replaces churned customers by obtaining new ones via telemarketing.

4

23.    This involves two steps. First, Liberty commissions an affiliate to place an automated and/or prerecorded telemarketing call pitching "going back to school". Second, if the target of the call doesn't immediately hang up, the affiliate "qualifies" him or her as a warm lead for Liberty's employees to telemarket to directly.

24.    That was Plaintiff's experience.

25.    Plaintiff's personal cell phone number is 484-626-3942. All calls to Plaintiff described herein were to that number.

26.    It has been assigned to Plaintiff since 2014.

27.    Plaintiff is the number's owner and sole user.

28.    Plaintiff registered his number with the National Do Not Call Registry in June of 2015.

29.    As of May 3, 2022, he had never given his phone number or done business with Liberty.

30.    Plaintiff has no desire to go back to school.

31.    In fact, Plaintiff graduated college with a business degree from Case Western Reserve University in 2019.

32.    **Call 1:** On May 4, 2022 at 1:47 PM, his phone rang.

33.    The caller ID showed 484-301-2874.

34.    On information and belief, the area code on the caller ID was spoofed or selected by contrivance in order to convey to Plaintiff the false impression that the caller was from his area.

35.    Plaintiff answered.

36.    There was an electronic sound characteristic of automatic dialers and a pause, another telltale sign of the use of an ATDS.

37.    Then, a live male came on the line.

38.    The male pitched Plaintiff on Liberty University.

5

39. **Call 2:** On May 4, 2022 at 3:43 PM, Plaintiff received a live (non-autodialed) call from a male representative from Liberty University. Plaintiff is not seeking damages for this call.

40. The male pitched Plaintiff on Liberty University.

41. The male repeatedly requested, and in every instance, Plaintiff refused to provide, consent to being contacted by automated technology. Plaintiff never provided prior express written consent to Defendant to direct any automated telemarketing to him or his cell phone.

42. Liberty's representative explicitly confirmed Plaintiff's refusal to provide said consent, and told Plaintiff, "*By selecting no, you're opting out of receiving such calls or texts from Liberty and its affiliates using automated technology*".

43. On May 4, 2022 at 4:13 PM, Plaintiff received an e-mail from LUOundergrad@liberty.edu, with the subject header "You've applied – here's what's next!"

44. **DNC Request:** On May 4, 2022 at 4:15 PM, Plaintiff replied to Liberty University's e-mail, asking not to receive any additional calls back. *See* Exhibit "1", a true and correct copy of said e-mail.

45. This e-mail was received.

46. Plaintiff did, however, receive more automated telemarketing from Liberty University.

47. **Call 3:** On May 6, 2022, Plaintiff received a prerecorded message from caller ID 434-592-4309, attempting to get the Plaintiff to enroll with Liberty University.

48. **Call 4:** On May 6, 2022, Plaintiff received a missed call from caller ID (434) 592-4309. As a result of the missed call, Plaintiff received a voicemail from "Hunter" with Liberty University attempting to get the Plaintiff to provide his consent to receive automated communications from Liberty. Plaintiff is not alleging this call was automated and therefore, is not seeking damages for the call.

6

49.    **Call 5:** On May 11, 2022 at 1:00 PM, Plaintiff received a missed call from caller ID 434-592-4309.

50.    The voicemail read: *"Hi, this is Andrew calling from Liberty University. The next acceptance deadline is just around the corner. Submit your remaining admissions requirements and be accepted by Wednesday, May 25 to begin courses as early as Monday, June 20. To be connected with an admissions counselor about submitting your remaining admissions requirements, call 800-424-9595 at your earliest convenience. Again, that's 800-424-9595."*

51.    The voicemail was robotic, impersonal, generic, and pre-recorded.

52.    **DNC Policy Request:** On May 15, 2022 at 3:12 PM, Plaintiff sent an e-mail to LUOadmissions@liberty.edu, and wrote "Please provide me with a copy of Liberty University's internal Do-Not-Call Policy. Thank you."

53.    On May 17, 2022 at 9:07 AM, Plaintiff received a return e-mail from Liberty University which said, in pertinent part: *"Please note that you will not be called for any reason."* See Exhibit "2", a true and correct copy of said e-mail chain.

54.    Plaintiff never received any such do-not-call policy from Defendant.

55.    **Call 6:** On May 17, 2022 at 10:05 AM, Plaintiff received a telemarketing call from caller ID (434) 592-4309.

56.    Plaintiff said "hello" several times with no response.

57.    Plaintiff then heard a prerecorded message which said: *"Hi this is Andrew calling from Liberty University... Submit your remaining admissions requirements ... we'll waive your application fee, saving you $50. To speak with an admissions counselor about what you need to do to finish the admissions process, call 800-424-9595. Again, that's 800-424-9595."*

**58.**     **Call 7:** On May 19, 2022, Plaintiff received another prerecorded message from Liberty University using caller ID (434) 592-4309, which said: *"Hi this is Andrew calling from Liberty University...when you apply and are accepted, we'll waive your application fee, saving you $50. To speak with an admissions counselor about completing your application, call 800-424-9595. Again, that's 800-424-9595."*

**59.**     For their prerecorded robocalls and automated texts, Liberty and its affiliates use ATDSs with the capacity to store or produce telephone numbers to be called. These ATDSs include predictive dialers and dialers that play one or more prerecorded messages once the calls connect.

**60.**     The calls were not necessitated by an emergency.

**61.**     Defendant's purported consent to make the calls at issue were not provided by Plaintiff.

**62.**     Indeed, Defendant was calling for a "Jeremiah", which is not the Plaintiff's name or a name Plaintiff has ever gone by.

**63.**     Defendant's purported consent to make the calls at issue lacks a wet-ink signature.

**64.**     Defendant's purported consent to make the calls at issue lacks a signature compliant with the E-SIGN Act.

**65.**     The telemarketing alleged herein:

   a. invaded Plaintiff's privacy and solitude;

   b. interrupted Plaintiff's train of thought;

   c. wasted Plaintiff's time;

   d. annoyed Plaintiff;

   e. harassed Plaintiff; and

   f. consumed the battery life of Plaintiff's cellular telephone.

**Liberty's Liability for the Initial Automated Call**

66.     While Liberty is directly liable for the automated calls it sent Plaintiff after he asked, not receive any more calls, it is also vicariously liable for the original pre-recorded telemarketing call that generated the lead for Liberty.

67.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. 227(b)(2).

68.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

69.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

70.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

71.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

72.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

73.     To the contrary, the FCC—armed with extensive data about robocallers and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

74.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

75.     Liberty is legally responsible for ensuring that the affiliates that make telemarketing calls on its behalf comply with the TCPA when so doing.

76.     Liberty knowingly and actively accepted business that originated through illegal telemarketing.

77.     Liberty knew (or reasonably should have known) that its telemarketer was violating the TCPA on its behalf but failed to take effective steps within Liberty's power to force the telemarketer to cease that conduct.

78.    By hiring a company to make calls on its behalf, Liberty "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

79.    Moreover, Liberty maintained interim control over the actions of its telemarketers.

80.    For example, Liberty had absolute control over whether, and under what circumstances, it would accept a customer from its telemarketers.

81.    Furthermore, Liberty had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS or prerecorded messages to contact potential customers of Liberty and the ability to require them to respect the National Do Not Call Registry.

82.    Liberty also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

83.    Liberty donned its telemarketers with apparent authority theory to make the calls at issue. Thus, the telemarketers not only pitched higher education in the abstract but also specifically pitched Liberty by name.

84.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

85.    "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

86.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an

11

agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

87.     Liberty's telemarketer transferred customer information, including Plaintiff's contact information, directly to Liberty. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

88.     Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

89.     Defendant did not have the Plaintiff's prior express written consent to make any of these calls.

90.     Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

91.     Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes.

## Causes Of Action

### Count One:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1), by Automated Telemarketing Without Prior Express Written Consent

92.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

93.    Defendant and/or its affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an ATDS and/or artificial or prerecorded voice without prior express written consent.

94.    Plaintiff is entitled to an award of $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

95.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendant and its affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or artificial or prerecorded voice without prior express written consent.

## Count Two:

### Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227(b)(1), by Automated Telemarketing Without Prior Express Written Consent

96.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

97.    Defendant and/or its affiliates or agents knowingly and/or willfully violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency telemarketing calls to the Plaintiff's cellular telephone numbers of Plaintiff using an ATDS and/or artificial or prerecorded voice without prior express written consent.

98.    Plaintiff is entitled to an award of $1,500 in damages for each such knowing and/or willful violation. 47 U.S.C. § 227(b)(3) (hanging paragraph).

### Relief Sought

For himself and all class members, Plaintiff requests the following relief::

A.    Leave to amend this Complaint to conform to the evidence presented at trial;

13

B.      A declaration that actions complained of herein violate the TCPA;

C.      An order enjoining Defendant and its affiliates, agents and related entities from engaging in the unlawful conduct set forth herein;

D.      For awards of $500 for each negligent violation as set forth in Counts 1-2.

E.      For awards of $1,500 for each knowing and/or willful violation as set forth in Counts 1-2.

Total statutory damages: **$7,500.00** (Five (5) counts of: "Automated Call", with treble damages for each.)

F.      Prejudgment interest at the maximum legal rate;

G.      Costs of suit herein incurred; and

H.      All such other and further relief as the Court deems necessary, just, and proper.

I.      **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: May 28, 2022

James Everett Shelton
*Plaintiff, Pro Se*
316 Covered Bridge Road
King of Prussia, PA 19406
Phone: 484-626-3942
Jeshelton595@gmail.com

## **VERIFICATION**

I, JAMES EVERETT SHELTON, Plaintiff, Pro Se, verify that the facts set forth in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements made herein are subject to the penalties of 18 PA. C.S. § 4904 related to unsworn falsification to authorities.


Dated: May 28, 2022

_James E. Shelton_
JAMES EVERETT SHELTON

JS 44  (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JAMES EVERETT SHELTON | LIBERTY UNIVERSITY, INC. |

**(b)** County of Residence of First Listed Plaintiff    **MONTGOMERY**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    **CAMPBELL**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Plaintiff Pro Se, 316 Covered Bridge Road, King of Prussia, PA 19406, (484) 626-3942

Attorneys *(If Known)*

Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☒ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| | | | | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
TCPA, 47 U.S.C. 227 et. seq.

Brief description of cause:
Violations of the TCPA

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
7,500.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*     JUDGE _____     DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 05/28/2022 | *James E. Shelton* |

**FOR OFFICE USE ONLY**

| RECEIPT # _____ | AMOUNT _____ | APPLYING IFP _____ | JUDGE _____ | MAG. JUDGE _____ |
|---|---|---|---|---|

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 316 Covered Bridge Road, King of Prussia, PA 19406 _____

Address of Defendant: _____ 1971 University Blvd, Lynchburg, VA 24502 _____

Place of Accident, Incident or Transaction: _____ By phone call to Plaintiff's phone in King of Prussia, Pennsylvania _____

---

***RELATED CASE, IF ANY:***

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 05/28/2022    *James E. Shelton*    Pro Se
                      Must sign here
*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    *Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
     *(Please specify):* _____ TCPA, 47 U.S.C. 227 _____

**B.    *Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
     *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ James Everett Shelton _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 05/28/2022    *James E. Shelton*    Pro Se
                      Sign here if applicable
*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| JAMES EVERETT SHELTON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LIBERTY UNIVERSITY, INC. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                              ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits.                                           ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos.                                                                                                       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court.  (See reverse side of this form for a detailed explanation of special
   management cases.)                                                                                                          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                 (X)

05/28/2022                          *James E. Shelton*                     Pro Se
**Date**                          ~~Attorney-at-law~~ *Pro Se*           **Attorney for**

484-626-3942                                                                        jeshelton595@gmail.com

**Telephone**                          **FAX Number**                     **E-Mail Address**

(Civ. 660) 10/02

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

U.S.M.S.
X-RAY

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

FSC MIX Board FSC® C118916

PAPER POUCH how2recycle.info

PRIORITY®
MAIL



### UNITED STATES POSTAL SERVICE.

Retail

**P**

US POSTAGE PAID

**$8.95**

Origin: 79925
06/01/22
4828550097-08

**PRIORITY MAIL 2-DAY®**

0 Lb 13.10 Oz

**1004**

EXPECTED DELIVERY DAY: 06/04/22

C019

SHIP
TO:

601 MARKET ST
PHILADELPHIA PA 19106-1729

**USPS TRACKING® #**

9505 5132 7477 2152 5357 92

FROM: James Everett Shelton
316 Covered Bridge Rd
King of Prussia PA 19406

RECEIVED
JUN - 6 2022

TO: Clerk EDPA
U.S. District Court
601 Market St.
Room 2609
Philadelphia PA 19106

Expected

Most dome

USPS Trac

Limited inte

When used

*Insurance does
Domestic Mail M

** See Internation

FLAT
ONE RATE

TRACK

PS000

FLAT RATE ENVELOPE

Package Pickup,
QR code.

M/PICKUP

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.